UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

JOSEPH GIGANTI,  CIV. NO. 12-996 (SRN/JSM)

    Plaintiff,  REPORT AND RECOMMENDATION

v.

BENJAMIN RICE, JR., et.al.,

    Defendants.

This matter is before the Court on Defendants' Motion to Dismiss or for Summary Judgment [Docket No. 14]. This matter was referred to the undersigned by the District Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) [Docket No. 1].

## II.    PROCEDURAL HISTORY

### A.    The Complaint

Plaintiff Joseph A. Giganti is a prisoner incarcerated at the Federal Prison Camp in Duluth, Minnesota ("FPC-Duluth"). Complaint, ¶1. Giganti is serving an 87-month sentence for conspiracy to distribute 100 kilograms or more of marijuana. Declaration of Julie Groteboer[1] ("Groteboer Decl."), ¶3; United States v. Giganti, 405 Fed. Appx. 31, 32 (6th Cir. 2010). Defendants are all employed at FPC-Duluth. Benjamin Rice, M.D. is the Clinical Director, Renee Hunter is a physician's assistant and Bryan White is the Health Services Administrator. Complaint, ¶¶5-7.

The facts as alleged in the Complaint are as follows: Giganti has suffered from shoulder pain since 2009. Id., ¶8. Hunter examined Giganti and told him that his

---

[1] Groteboer is a paralegal specialist employed by the United States Bureau of Prisons. Groteboer Decl, ¶1.

shoulder muscle was tearing—a conclusion consistent with an MRI Giganti underwent in August, 2011. Id., ¶9. The MRI showed a possible "small partial tear" in Giganti's right shoulder muscle. Id.

Giganti filed a grievance on March 15, 2011, requesting to see defendant Dr. Rice and an orthopedic surgeon. Id., ¶10. Giganti's request was denied. Id., ¶10. Giganti alleged that the defendants' actions constituted deliberate indifference to his serious medical needs, in violation of the Eighth Amendment. Id., ¶12. Giganti sued defendants in their individual capacities pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971) and their official capacities for monetary damages and an order requiring defendants to refer Giganti to an orthopedic surgeon for care regarding his right shoulder, surgical repair of the shoulder and post-surgery physical therapy. Id., ¶¶13-14.

### B. Defendants' Motion to Dismiss or for Summary Judgment

Defendants reviewed the history the FPC-Duluth Medical staff's involvement in treating Giganti's shoulder ailment. Defendants' Memorandum of Law in Support of Motion to Dismiss or for Summary Judgment ("Def. Mem."), pp. 1-9. This treatment included the following: In 2008, while incarcerated at the Federal Correctional Institute in Milan, Michigan, Giganti underwent an x-ray of his right shoulder, which did not reveal any bone or soft tissue abnormalities. Declaration of Renee Hunter ("Hunter Decl."), ¶4, Attachment A, p. 13 [Docket No. 19].

In October, 2010, Hunter examined Giganti and requested an x-ray of his right shoulder. Id. at p. 25. The x-ray report was returned on November 9, 2010, and was negative except for mild spurring at the acromion and clavicle joint. Id. at p. 24. On

January 26, 2011, while seeking treatment for a rash, Giganti asked about the result of the x-ray, as he had "intermittent pain and clicking" in his shoulder. Id. at p. 20. On March 10, 2011, Giganti filed a Request for Administrative Remedy, complaining that he was dissatisfied with the treatment he had been receiving and requesting an MRI, consultation with an orthopedic surgeon, surgery, prescription pain medication and an appointment with the Medical Director. Groteboer Decl., Attachment A. Giganti failed to exhaust his administrative remedies regarding this complaint. Groteboer Decl. ¶4.

On May 5, 2011, Giganti saw a nurse practitioner ("NP") who examined his right shoulder. Hunter Decl., Attachment A, p. 28. The NP assessed Giganti's condition as a chronic sprain or strain but could not rule out a labrum tear. Id. The NP requested an MRI of Giganti's right shoulder. Id., p. 29. Dr. Rice co-signed the NP's report. Id., p. 29. On June 16, 2011 Hunter saw Giganti and explained that additional information was needed before the MRI could be approved. Id.

On August 25, 2011, Giganti underwent an MRI. Id., p. 40. The specialist reviewing the MRI diagnosed bursitis. Id. The MRI did not show a full thickness tear of the rotator cuff, but could not rule out a small partial tear. Id. On January 5, 2012, Giganti was seen by Orthopedic Specialist Dr. Nelson. Hunter Decl., ¶20. Dr. Nelson diagnosed chronic right shoulder pain, loss of active range and instability. Id. Dr. Nelson recommended an MRI-arthrogram for better imaging of the rotator cuff and glenoid labrum. Id. Hunter renewed Giganti's prescription for Naproxen and provided him with an orange Theraband and exercises for his right shoulder. Hunter Decl., Attachment A, p. 44. Following the completion of the MRI-arthrogram, Dr. Nelson asked

that a follow-up appointment be made to discuss continued non-operative therapies with Giganti, including physical therapy and a cortisone injection. Hunter Decl., ¶20.

On January 12, 2012, the FPC-Duluth Utilization Review Committee[2] ("URC") reviewed the request for a follow-up consultation, but referred the request for an MRI-arthrogram to the Regional Medical Director. Declaration of Benjamin Rice, MD ("Rice Decl."), Attachment B, p. 28 [Docket No. 18]. The Regional Medical Director denied the request for lack of information. Hunter Decl., ¶22; Rice Decl., ¶8. The medical staff at FPC-Duluth attempted to schedule a consultation with an orthopedic specialist, but without the MRI-arthrogram, the specialist would not see Giganti. Rice Decl., Attachment C, p. 30.

On June 7, 2012, Dr. Rice renewed his request for an MRI-arthrogram. Def. Mem., Ex. 2 (Bureau of Prisons Health Services Request); Rice Decl., ¶11. The URC referred the request to the Regional Office, which approved the request on June 12, 2012. Rice Decl., ¶11. The MRI-arthrogram was performed on July 13, 2012. Def. Mem., Ex. 3 (radiology diagnostic report). No rotator cuff tear was found and Giganti was diagnosed with "possible minimal subcromial bursitis." Id. Dr. Rice requested an orthopedic consultation—which apparently could now go forward in light of the fact that the orthopedist could refer to the MRI-arthrogram. The orthopedist examined Giganti on August 15, 2012, and found an indication of a sprain or strain of the rotator cuff. Def.

---

[2] The URC is a multidisciplinary committee generally comprised of the clinical director, a Utilization Review staff member and the Associate Warden. Def. Mem., p. 3; Declaration of Dr. Benjamin Rice, ¶¶5, 6 [Docket No. 18]. The URC reviews services recommended by the medical staff. Id. Such services are approved, denied or referred to the Regional Medical Director for further consideration. According to defendants, a referral to the Regional Medical Director helps ensure that inmates are treated similarly, regardless of the particular institution to which the inmate is designated. Id.

4

Mem., Ex. 5 (Clinical Encounter, Administrative Note).  The orthopedist provisionally diagnosed Giganti with "supraspinatus tendonopathy with subacromial impingement and AC joint arthopathy" and recommended that Giganti be referred to an orthopedic surgeon.  Id.

On September 12, 2012, an orthopedic surgeon examined Giganti.  Def. Mem., Ex. 6 (Essentia Health Duluth Clinic Consultation Report).  Giganti told the orthopedic surgeon that he had attempted to relieve his symptoms with an exercise program, ibuprofen, and naproxen.[3]  The surgeon recommended arthroscopic surgery of the anterior and posterior capsular shift and naproxen as needed for pain management.  Id.

On September 12, 2012, Dr. Rice ordered that surgery be performed by November 9, 2012.  Def. Mem., Ex. 7 (BOP Health Services Consultation Request).  Dr. Rice's order was reviewed by the URC and forwarded to the Regional Medical Director, which approved the order on September 27, 2012.[4]  Id.

---

[3]    Naproxen is a non-steroidal anti-inflammatory drug. http://www.nlm.nih.gov/medlineplus/druginfo/meds/a681029.html.

[4]    Plaintiff filed his lawsuit on April 23, 2012 [Docket No. 1].  Defendants moved three times for extensions of time to respond to the Complaint [Docket Nos. 3, 7, 10].  Defendants' first motion sought an additional thirty days to answer or respond "because intervening events will affect the response, perhaps mooting the request for relief."  Defendants' Memorandum in Support of Motion for Extension of Time to Answer or Otherwise Respond, p. 1 [Docket No. 4].  Defendants' brought their second motion for an extension on August 23, 2012, after Giganti had been seen by the orthopedist and before he was seen by the orthopedic surgeon.  Defendants stated that "the medical imaging is being examined for referral to a surgeon for a consultation . . .that may moot the request for relief."  Defendants' Memorandum in Support of Motion for Extention of Time to Answer or Otherwise Respond, p. 1 [Docket No. 8].  Defendants' third motion for an extension of time was based on an unexpected rescheduling of Giganti's consultation with the orthopedic surgeon.  Defendants' Memorandum in Support of Motion for Extention of Time to Answer or Otherwise Respond, p. 1 [Docket No. 11].  This Court granted all three motions [Docket Nos. 6, 9, 13].  Defendants filed their motion for summary judgment on October 2, 2012, after the Regional Medical Director

Defendants moved to dismiss Giganti's complaint, or for summary judgment on the grounds that the defendants are entitled to qualified immunity; the facts do not establish that the defendants were deliberately indifferent to Giganti's serious medical needs in violation of the Eighth Amendment; and Giganti is not entitled to mandamus relief in the form of surgery. Def. Mem., pp. 9-17.

C. **Plaintiff's Failure to Respond to Defendants' Motion**

Giganti did not respond to defendants' motion to dismiss or for summary judgment, despite being ordered to do so.[5] Order, October 3, 2012, ¶1 [Docket No. 22]. Giganti remains incarcerated at FPC-Duluth,[6] therefore his failure to respond is not attributable to his release from prison. Defendants argued that the Court should deem their motion unopposed and grant summary judgment accordingly. Defendant's Reply, p. 1 (citing Satcher v. University of Ark. at Pine Bluff Bd. Of Trs., 558 F.3d 731, 734 (8th Cir. 2009) ("[f]ailure to oppose a basis for summary judgment constitutes waiver of that argument.")). [Docket No. 23]. For the reasons described in detail below, this Court considered the motion on its merits and recommends that defendants' motion be granted and the suit dismissed with prejudice.

---

approved Giganti's surgery. This Court has no information regarding whether the surgery has been performed.

[5] This Court ordered Giganti to file and serve a response to defendants' Motion to Dismiss or for Summary Judgment on or before November 7, 2012. Order, ¶1.

[6] http://www.bop.gov/iloc2/InmateFinderServlet?Transaction=NameSearch&needingMoreList=false&FirstName=joseph&Middle=&LastName=giganti&Race=U&Sex=U&Age=&x=85&y=23.

6

## II. LEGAL STANDARDS

### A. <u>**Motion to Dismiss**</u>

#### 1. Fed. R. Civ. P. 12(b)(6)

Defendants have moved for dismissal under Rule 12(b)(6) and Rule 12(b)(1). In considering a motion to dismiss under Rule 12(b)(6), the pleadings are construed in the light most favorable to the non-moving party, and the facts alleged in the complaint must be taken as true. <u>Ashley County, Ark. v. Pfizer, Inc.</u>, 552 F.3d 659, 665 (8th Cir. 2009). In addition, "the court must resolve any ambiguities concerning the sufficiency of the plaintiffs' claims in favor of the plaintiffs, and give the plaintiffs the benefit of every reasonable inference drawn from the well-pleaded facts and allegations in their complaint." <u>Ossman v. Diana Corp</u>., 825 F. Supp. 870, 880 (D. Minn. 1993) (internal quotation marks and citations omitted). At the same time, to withstand a motion to dismiss under Rule 12(b)(6), litigants must properly plead their claims under Rule 8 of the Federal Rules of Civil Procedure and meet the principles articulated by the United States Supreme Court in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007) and <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009). Under Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." This pleading requirement does not require detailed factual allegations. <u>Martin v. ReliaStar Life Ins. Co.</u>, Civil No. 09-01578 (MJD/AJB), 2010 WL 1840877 at *8 (D. Minn. 2010) (citing <u>Twombly</u>, 550 U.S. at 555).

#### 2. Fed. R. Civ. P. 12(b)(1)

Defendants also moved for dismissal for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). Defendants' Motion to Dismiss or for Summary

7

Judgment, p. 1. On a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction the defendant must successfully challenge the complaint "either on its face or through an attack on truthfulness of the factual allegations." Ringsred v. City of Duluth, 187 F.Supp.2d 1141, 1153 (D. Minn. 2001). In a facial challenge to subject matter jurisdiction the factual allegations are accepted as true and court asks whether jurisdiction exists under the circumstances. Id. (citations omitted). In a jurisdictional challenge under Rule 12(b)(1) the court may consider matters outside the pleadings. Id. (citation omitted).

### B. Motion for Summary Judgment

Defendants have moved in the alternative for summary judgment pursuant to Rule 56. Summary judgment is proper if, drawing all reasonable inferences favorable to the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celeotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); see also Unigroup, Inc. v. O'Rourke Storage & Transfer Co., 980 F.2d 1217, 1219 (8th Cir. 1999). "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" DePugh v. Smith, 880 F. Supp. 651, 656 (N. D. Iowa 1995) (quoting Anderson, 477 U.S. at 248). "[I]f the court can conclude that a reasonable trier of fact could return a verdict for the nonmovant, then summary judgment should not be granted." DePugh, 880 F.Supp. at 656 (quoting Anderson, 477 U.S. at 248).

The moving party bears the burden of showing that the material facts in the case are undisputed. Celotex Corp., 477 U.S. at 322-23; see also Mems v. City of St. Paul,

Dep't of Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000). If the moving party has carried its burden, the non-moving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. Anderson, 477 U.S. at 256; Krenik v. County of LeSueur, 47 F.3d 953, 957 (8th Cir. 1995). "The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial." Minnesota Laborers Health & Welfare Fund v. Swenke, 2003 U.S. Dist. LEXIS 11439, *4-5 (D. Minn. 2003) (citations omitted).

When considering a motion for summary judgment, the Court must view the evidence, and the inferences that may be reasonably drawn from the evidence, in the light most favorable to the non-moving party. Enterprise Bank v. Manga Bank of Mo., 92 F.3d 743, 747 (8th Cir. 1996).

This Court has considered the declarations and exhibits defendants submitted in connection with their motion and will, therefore, treat the motion as one for summary judgment. See Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."); see also McAuley v. Federal Ins. Co., 500 F.3d 784, 787 (8th Cir. 2007) ("We have previously held that 'Rule 12(b)(6) itself provides that when matters outside the pleadings are presented and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56.'")

Although Giganti failed to respond to defendants' motion, the Court will not recommend summary judgment by default. See Canada v. Union Elec. Co., 135 F.3d

9

1211, 1213 (8th Cir. 1997) ("In the present case, plaintiff did not file any opposition to defendant's motion for summary judgment, but we believe, nevertheless, that the District Court was correct in not treating this non-response as itself sufficient to dispose of the motion. When a motion would be dispositive of the merits of the case if granted, courts should normally not treat a failure to respond to the motion as conclusive. They should. . .examine those portions of the record properly before them and decide for themselves whether the motion is well taken.")

Federal Rule of Civil Procedure 56(e) itself provides that if "the adverse party does not respond, summary judgment, if appropriate, shall be entered against the adverse party." (emphasis added). Therefore, even if the motion is unopposed, the Court must determine whether summary judgment is "appropriate." Stroeder v. Smith, Civ. No. 10-4115 (PAM/JJK), 2013 WL 354112 at *3 (D. Minn. Jan. 3, 2013). Nonetheless, the Court is not "required to scour the record to determine whether there are issues of fact that preclude summary judgment." Id. (citing Satcher, 558 F.3d at 735 (where summary judgment is unopposed, "[i]t was not the District Court's responsibility to sift through the record to see if, perhaps, there was an issue of fact."). Giganti is entitled to the benefit of the less stringent standard of pleading afforded a pro se party. Haines v. Kerner, 404 U.S. 519, 520 (1972). Neverthless, Giganti's pro se status, the standards of Fed. R. Civ. P. 56 apply to Giganti and defendants equally. Quam v. Minnehaha County Jail, 821 F.2d 522, 522 (8th Cir. 1987) (per curiam) ("Although [plaintiff] is entitled to the benefit of a liberal construction of his pleadings because of his pro se status, Federal Rule of Civil Procedure 56 remains applicable to [his] lawsuit.").

With these standards of review in mind, the Court turns to defendants' motion.

## III. DISCUSSION

"A Bivens action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors." Ho v. United States, Civ. No. 12-126 (DWF/LIB), 2012 WL 6861343 at *4 (D. Minn. Dec. 11, 2012) (internal quotation and citation omitted). "A Bivens claim allows a plaintiff to bring an action for money damages against federal agents acting under the color of their authority for injuries caused by their unconstitutional conduct. A plaintiff asserting a claim under Bivens must show the violation of a valid constitutional right by a person acting under color of federal law." Id. (internal citation and quotation omitted). Although a federal prisoner may bring a Bivens action against individual government employees acting within the scope of their individual capacities, "[t]he prisoner may not bring a Bivens claim against the officer's employer, the United States, or the BOP. . . [because] his only remedy lies against the individual." Correctional Servs. Corp. v. Malesko, 534 U.S. 61, 62 (2001). Therefore, the Court recommends the dismissal of Giganti's claims against Hunter, White and Dr. Rice in their "official capacities" as a matter of law because the Court lacks subject matter jurisdiction to consider these claims.

Additionally, defendants have qualified immunity as individuals from suit. "Qualified immunity shields government officials performing discretionary functions from civil liability unless their conduct violate[s] clearly established statutory or constitutional rights of which a reasonable person would have known." Luckert v. Dodge County, 684 F.3d 808, 817 (8th Cir. 2012) (internal citations and quotations omitted).

Determining the question of qualified immunity involves the following two-step inquiry: (1) whether the facts shown by the plaintiff make out a violation of a

11

constitutional or statutory right; and (2) whether that right was clearly established at the time of the defendant's alleged misconduct. Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part on other grounds by Pearson v. Callahan, 555 U.S. 223 (2009) (holding that Saucier's two-step sequence is not mandatory). Pursuant to Pearson, courts have the discretion to decide 'which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.'" Fields v. Abbott, 652 F.3d 886, 890 (8th Cir. 2011) (quoting Pearson v. Callahan, 555 U.S. 223, 236 (2009). Therefore, analyzing both Giganti's ability to maintain a Bivens action against the defendants and the defendants' defense of qualified immunity requires the Court to determine if defendants violated Giganti's constitutional rights.

The Eighth Amendment's prohibition on cruel and unusual punishment protects prisoners from deliberate indifference to their serious medical needs. Luckert, 684 F.3d at 817. "A prison official exhibits deliberate indifference when the official actually 'knows of and disregards' a prisoner's serious medical needs." Boyd v. Knox, 47 F.3d 966, 968 (8th Cir. 1995) (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). The prisoner's complaint must allege facts showing that the named defendants harmed him by deliberately disregarding his "serious medical needs," Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). A "serious medical need" is "'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" Santiago v. Blair, 707 F.3d 984, 990 (8th Cir. 2013) (quoting Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995)). In addition, the prisoner's claim must be supported by factual allegations showing that

the prisoner's medical condition was exacerbated because of the prison official's alleged deliberate indifference. Thus, "[w]hen the inmate alleges that a delay in medical treatment rises to the level of an Eighth Amendment violation, the objective seriousness of the deprivation should also be measured by reference to the effect of delay in treatment," i.e., the inmate must "establish the detrimental effect of delay in medical treatment." Laughlin v. Schriro, 430 F.3d 927, 929 (8th Cir. 2005), cert. denied, 549 U.S. 927 (2006) (citations and internal quotation marks omitted).

Also, "[f]or a claim of deliberate indifference, 'the prisoner must show more than negligence, more than even gross negligence, and mere disagreement with treatment decisions does not rise to a level of a constitutional violation." Popoalii v. Correctional Med. Servs., 512 F.3d 488, 499 (8th Cir. 2008) (quoting Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995)).

Finally, "'[i]nmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment.'" Hines v. Anderson, 547 F.3d 915, 920 (8th Cir. 2008) (quoting Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997); see also Taylor v. Turner, 884 F.2d 1088, 1090 (8th Cir. 1989) (prison officials do not violate a prisoner's constitutional rights when, "in the exercise of their professional judgment they refuse to implement a prisoner's requested course of treatment.").

Here, Giganti's Complaint did not present an actionable Eighth Amendment claim because there were no factual allegations showing that any prison officials were deliberately indifferent to any of Giganti's serious medical needs. In fact, the uncontroverted evidence shows consistent attention by medical staff of the FPC-Duluth

to Giganti's complaints about his shoulder.  See Rice Decl.; Hunter Decl.; Hunter Decl., Attachment A (medical records) Declaration of Byran White [Docket No. 20]; Def. Mem., Exs. 1-7.  After the Regional Medical Director initially refused Dr. Rice's request for an MRI-arthrogram, Dr. Rice renewed his request and obtained the MRI-arthrogram, a consultation with an orthopedist and a referral to an orthopedic surgeon.  There is no evidence in the record that Giganti's condition worsened between the time that Dr. Rice's initial request for an MRI-arthogram was refused and the date on which Giganti was seen by the orthopedic surgeon.  In addition, Giganti was consistently advised on ways to relieve his pain, such as stretching, applying heat, taking over-the-counter anti-inflammatory medications and being prescribed Naproxen.  Hunter Decl., ¶¶9, 13, 21; Hunter Decl., Attachment A.

Suffice it to say, the evidence indicates that the medical personnel at FPC-Duluth provided an appropriate level of care to Giganti and, in fact, were diligent in their efforts to help him.  There is no evidence that any of the defendants' conduct was "akin to criminal recklessness"—the standard for deliberate indifference.  Drake ex.rel. Cotton v. Koss, 445 F.3d 1038, 1042 (8th Cir. 2006).  In addition, while Giganti is entitled to a reasonable level of medical care, he is not entitled to the treatment of his choice.  Dean v. Coughlin, 804 F.2d 207, 215 (2nd Cir. 1986) ("[T]he essential test is one of medical necessity and not one simply of desireability.") (alteration in original) (internal quotations and citations omitted).  Even medical malpractice may not support an Eight Amendment claim.  Estelle, 429 U.S. at 106.  Merely because Giganti was allegedly not referred to an orthopedic specialist or surgeon quickly enough (according to Giganti) does not constitute "deliberate indifference" to his medical needs.

For these reasons, the Court concludes that Giganti has not shown that there are genuine issues of material fact that any of defendants' conduct violated his Eighth Amendment rights. Therefore, the Court recommends that summary judgment be granted in defendants' favor because the defendants are entitled to qualified immunity.

Giganti also sought mandamus relief in the form of an order requiring that he be given surgery on his rotator cuff. Complaint, ¶13. Title 28 U.S.C. §1361 states: "[t]he district court shall have original jurisdiction of any actions in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." To obtain mandamus relief, a plaintiff must establish: (1) he has a clear right to the relief requested; (2) the BOP has plainly defined and non-discretionary duty to provide the requested relief; and (3) there is no alternative remedy. Castillo v. Ridge, 445 F.3d 1057, 1060-61 (8th Cir. 2006). A writ of mandamus is a drastic remedy, "to be invoked only in extraordinary situtations." Allied Chem. Corp. v. Daiflon, Inc., 449 U.S. 33, 34 (1980).

Because the Court has already concluded that as a matter of law the defendants have not been deliberately indifferent to Giganti's serious medical needs, and in light of the fact that Dr. Rice has authorized surgery, the Court also concludes that Giganti has failed to establish a basis for mandamus relief. See Ramirez v. United States, Civ. No. 11-2931 (PJS/AJB), 2013 WL 646238 at *5 (D. Minn. Feb. 4, 2013) (a prisoner's complaint seeking relief in the form of an order requiring surgery is a request for mandamus relief and is analyzed in the context of prisoner's Eighth Amendment claim that the BOP acted with deliberate indifference to his serious medical needs).

Lastly, the Court observes that Giganti's Complaint failed to describe what, exactly, each defendant did or failed to do that impinged on Giganti's constitutional rights. Giganti accused Dr. Rice of "being aware" of the allegations that his shoulder was painful, but did not otherwise allege any wrongdoing by Dr. Rice. Similarly, White, the Health Services Administrator at FPC-Duluth, is not mentioned in the Complaint at all, other than in the caption and in paragraph 7, which identified White. As to Hunter, Giganti only alleged that he visited with her and that he told her his shoulder was giving him pain and Hunter told him that his shoulder muscle was tearing. Complaint, ¶¶8, 9. Although Giganti seems to imply that Hunter was indifferent to his medical needs by failing to refer him to a physician, the undisputed evidence is that Orthopedic Specialist Dr. Nelson saw Giganti on January 5, 2012—over three months before Giganti filed his Complaint. Hunter Decl., ¶20.

It is well-established that a complaint that "lumps all defendants together and does not sufficiently allege who did what to whom, fails to state a claim for relief because it does not provide fair notice of the grounds for the claims made against a particular defendant." Tatone v. SunTrust Mortg., Inc., Civ. No. 11-1862 (MJD/JSM), 2012 WL 763581 at *9 (D. Minn. May 17, 2011); see also Johnson v. Minnesota Dept. of Corrections, Civ. No. 12-784 (PAM/JSM), 2012 WL 2050246 at *3 (D. Minn. May 15, 2012) ("Thus, in order to state an actionable civil rights claim, a complaint must set forth specific factual allegations showing what each named defendant allegedly did, or failed to do, that purportedly violated the plaintiff's federal constitutional rights. The 'plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'") (quoting Iqbal, 556 U.S. at 676) (emphasis in

original).  Further, although the heightened pleading standard once imposed on plaintiffs bringing §1983 claims against individual defendants has been abrogated, the Court "retain[s] all tools available under the Federal Rules of Civil Procedure to eliminate meritless claims early in the litigation" by requiring a plaintiff to "delineate independent causes of action against individual defendants. . . ."  <u>Doe v. Cassel</u>, 403 F.3d 986, 989 (8th Cir. 2005).

Giganti's failure to distinguish between the defendants is the final reason to recommend dismissal of the Complaint.  While these defects could have been cured by re-pleading, where, as here, the Court has recommended that the Complaint be dismissed with prejudice because there are no genuine issues of material fact regarding Giganti's allegations, no re-pleading by each defendant can save this Complaint.

## IV. RECOMMENDATION

For the reasons set forth above and based on all the files, records, and proceedings herein, IT IS RECOMMENDED that:

Defendants' Motion to Dismiss or for Summary Judgment [Docket No. 14] be GRANTED and Plaintiff's lawsuit be dismissed with prejudice.

Dated: June 11, 2013                             *Janie S. Mayeron*
                                                 JANIE S. MAYERON
                                                 United States Magistrate Judge

**NOTICE**

Under D. Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **June 25, 2013** a writing that specifically identifies those portions of this Report to which objections are made and the basis of those objections.  A party may respond to the objecting party's brief within 14 days after service thereof.  All briefs filed under this Rule shall be limited to 3500 words.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.